# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

KEITH L. TRIPP,          )
                               )
        Plaintiff,        )
                               )
     vs.                 )      Case No.  6:22-cv-03119-MDH
                               )
CHRISTIAN COUNTY, MISSOURI, et al.,   )
                               )
        Defendants.     )

## ORDER

Before the Court is Defendants Christian County, Missouri; David Loe; Rick Hill; and Trevor Guinn's (collectively "County Defendants'") Motion for Summary Judgment. Also before the Court is Defendants City of Clever, Missouri; Darren Whisnat; Kainon Bouldin; and Dillon Petersen's (collectively "Clever Defendants'") Motion for Summary Judgment. The final matter this order addresses is Plaintiff's Motion to Substitute Parties. Each of these matters is ripe and this Court has considered all briefing. For reasons herein, the County Defendants' Motion for Summary Judgment is **GRANTED**. Clever Defendants' Motion for Summary Judgment is also **GRANTED**. Plaintiff's Motion to Substitute Parties is **GRANTED IN PART, DENIED IN PART**.

## BACKGROUND

Five alleged incidents, each involving an interaction between Plaintiff and law enforcement in Christian County, Missouri, form the basis of this lawsuit. The first incident is alleged to have occurred during January 2018 and the most recent in January 2022. Plaintiff contends generally

1

that these incidents give rise to seven state level common law claims and one federal constitutional claim. This Court will briefly discuss each incident in turn.

On January 21, 2018, law enforcement officers from Clever, Missouri and Christian County, Missouri responded to 509 Clarke, Clever, Missouri following reports of a three-week-old infant who had stopped breathing. Tragically, the infant was pronounced dead at the hospital shortly thereafter. The autopsy report lists as the official cause of death, Sudden Infant Death Associated with Unsafe Sleep Environment. The mother of the deceased infant, Amber Weeks, is Plaintiff's niece. An investigation of the residence at 509 Clarke Avenue, where the death occurred, revealed living conditions Plaintiff agrees were "filthy." This includes animal feces on the floor, expired food scattered throughout, cockroaches, and a flooded basement. People living at 509 Clarke included Amber Weeks, the deceased infant, and Ms. Weeks' two other children. Several adults lived at the residence as well. Plaintiff was present on scene when law enforcement officers responded to reports about the infant. Plaintiff claims to have told Defendant Guinn, who was on scene at 509 Clarke, that he did not live at 509 Clarke. Shortly thereafter, Plaintiff informed Lt. Duryea of the Christian County Sheriff's Department that he did in fact live there. This exchange with Lt. Duryea is captured on video taken by Plaintiff himself. During a later interview at the police station, Ms. Weeks also told officers that Plaintiff lived at the 509 Clarke address. This exchange is also captured on video. Plaintiff maintains that he did not live at 509 Clarke on January 21, 2028.

Plaintiff and the three other adults unquestionably living at 509 Clarke were indicted on July 20, 2018 by a Christian County grand jury for three counts of felony-level child endangerment. The indictment charges Plaintiff and the three other adults as co-defendants, "acting together…in a manner that created substantial risk to the body and health" of the deceased

infant and Ms. Weeks' two surviving children.[1] The indictment alleges the specific acts that increased risk of injury include "maintaining the residence in which they live…to be unsafe and unsanitary including but not limited to the residence being roach infested, only having one unobstructed door to provide egress from the home, having a basement accessible from the interior of the home with standing water, having a collapsed swimming pool with standing water, [and] having animal feces on the floor…" The probable cause statement, signed by Defendant Loe, references the state of the residence as well as the fact that Plaintiff told officers that he lived at the house. Plaintiff appears to have been arrested and held in jail pretrial on the child endangerment charges, though the record fails to indicate precisely how long Plaintiff's confinement lasted. On April 29, 2020, Christian County Prosecuting Attorney Amy Fite filed a memo of *nolle prosequi* with the court, dismissing the criminal charges against Plaintiff. Prosecutor Fite's memo states as a reason for the dismissal additional evidence gathered by prosecutors that shows Plaintiff was untruthful when he informed officers that he resided at 509 Clarke. This incident gives rise to Plaintiff's allegations in Counts One and Two, in which he alleges, respectively, state-level false imprisonment and malicious prosecution against Defendants City of Clever, Loe, Hill, Guinn, and Whisnant.

The second alleged incident occurred approximately in September 2019, when Plaintiff claims he was "followed, stopped, searched, seized, detained and arrested, against his will for no reason, and without probable cause" after Plaintiff was leaving a convenience store. Plaintiff alleges that one or more Christian County deputies were responsible for this incident, but Plaintiff has apparently failed to discover their identity, as Plaintiff has not sought to replace "John Doe 4,"

---

[1] Tragically, Ms. Weeks lost a second child after the death of the first infant. Facts surrounding the second death are not germane to this lawsuit.

3

the defendant alleged to be responsible for this incident, with any named defendant. Plaintiff has not alleged anything additional as to this incident, which is not the subject of either summary judgment motion. This incident gives rise to Plaintiff's Count Seven, in which John Doe 4 is the only named Defendant.

The third incident at issue involves a speeding ticket issued to Plaintiff November 30, 2019. Defendant Kainon Bouldin, a Clever, Missouri police officer, issued a speeding ticket to Plaintiff. Defendant Bouldin alleges that he observed Plaintiff speeding above the posted fifty-five mile per hour speed limit and that the police cruiser's radar clocked Defendant traveling seventy-four miles per hour. Plaintiff, however, maintains he was not speeding at the time. Defendant Bouldin filed the traffic citation with the Clever Municipal Court and Plaintiff pled not guilty. This case was later dismissed without prejudice after Defendant Bouldin failed to appear for a bench trial. Defendant Bouldin claims he failed to appear because he was actively deployed outside Missouri with the United States Army at the time of the scheduled bench trial on March 5, 2020. This incident gives rise to Plaintiff's allegations in Counts Three and Four, in which Plaintiff alleges, respectively, state-level claims of false arrest and malicious prosecution against Defendants City of Clever and Bouldin.

The fourth incident at issue occurred during April 2021. Plaintiff claims he was stopped by Defendant John Doe 2, who the parties agree is Defendant Petersen, for speeding. Plaintiff maintains that he was not speeding at the time, while Defendant Petersen contends the opposite. Defendant Petersen issued a warning as to the alleged speeding violation, but ticketed Plaintiff for failure to provide proof of insurance. The failure to provide insurance violation was later dismissed when Plaintiff provided a copy of his insurance to the municipal prosecutor. This incident gives

rise to Plaintiff's allegations in Count Five, in which Plaintiff brings a claim of "false arrest, detainment, and search and seizure."

According to the Amended Complaint, the most recent incident occurred during January 2022, when Plaintiff claims a Christian County deputy, John Doe 3, "unlawfully stopped, searched, seized, detained, and arrested [Plaintiff] against his will…after gunshots were fired by [Plaintiff's] neighbor." (Doc. 1-2 at 141). In Plaintiff's Motion to Substitute Parties, Plaintiff moves this Court to replace John Doe 3 with Officer Tom Buchness, an officer with the Christian County Sheriff's Office. Because Plaintiff failed to move to substitute Officer Buchness for John Doe 3 until after the dispositive motion deadline, counsel has not entered for Officer Buchness. This January 2022 incident gives rise to Plaintiff's Count Six false arrest claim.

Beyond the seven counts described above, in Count Eight, Plaintiff specifically cites 42 U.S.C. § 1983, alleging that all named defendants were working under color of state law at the relevant time and violated Plaintiff's constitutional rights, including, but not limited to, Plaintiff's Fourth Amendment right to be free from unlawful searches and seizures. Because Plaintiff's Amended Petition fails to cite § 1983 or other federal code elsewhere apart from Count Eight, this Court understands Counts One through Seven of Plaintiff's Amended Petition as bringing claims under Missouri state law alone.

**STANDARD OF REVIEW**

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc*., 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not

5

find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

### I.     Plaintiff's Motion to Substitute Parties

Plaintiff's Amended Complaint lists several named defendants and three unnamed defendants: John Doe 2; John Doe 3; and John Doe 4.[2] Plaintiff's Motion to Substitute Parties asks this Court to substitute Defendant Petersen for John Doe 2 and Officer Buchness of the Christian County Sheriff's Office for John Doe 3. Counsel for the Clever Defendants offers no objection to this Court substituting Defendant Petersen for John Doe 2. Clever Defendants plainly acknowledge Defendant Petersen is in fact John Doe 4. Clever Defendants' Motion for Summary Judgment is filed in part on behalf of Defendant Petersen. Accordingly, Plaintiff's Motion to Substitute Parties is **GRANTED** as to Defendant John Petersen, who is hereby substituted for John Doe 4.

Plaintiff's Motion also seeks to substitute Officer Buchness of the Christian County Sheriff's Office for Defendant John Doe 3. County Defendants, however, oppose Plaintiff's request, arguing

---

[2] Plaintiff's original complaint, filed in state court, listed Defendant Bouldin as John Doe 1, though Plaintiff's Amended Complaint substituted Defendant Bouldin for John Doe 1.

that Plaintiff's Motion comes well after the close of discovery and the dispositive motion deadline, causing Officer Buchness prejudice.

Plaintiff has attached a police report which appears to be written by Officer Buchness to his opposition to the County Defendants' Motion for Summary Judgment. (Doc. 34-8). This report appears to show Officer Buchness responded to Plaintiff's residence after Plaintiff's neighbor called police and reported Plaintiff, who the neighbor knew to be a convicted felon, was shooting a rifle on Plaintiff's property. According to this police report, Officer Buchness responded to Plaintiff's residence. Plaintiff produced a knife on the Officer's arrival and placed the knife in the grass. The report claims Officer Buchness briefly detained Plaintiff and conducted a consent search of Plaintiff's person, revealing no firearm. While these events in a very general way appear to reflect the allegations in Count Six of the Amended Complaint, Plaintiff's mere inclusion of the police report fails to make clear that Officer Buchness is in fact John Doe 3. Significantly, the police report reflects events that occurred on October 31, 2021, while the events described in the Amended Complaint occurred in January 2022.

This Court agrees that Plaintiff's Motion is untimely and would prejudice Officer Buchness. Plaintiff's Motion offers no reason for the delay in moving to substitute Officer Buchness for John Doe 4. Plaintiff filed his Motion May 24, 2023, contemporaneously with his responses in opposition to Defendants' Motions for Summary Judgment. Discovery closed in this case on March 6, 2023 and dispositive motions were due no later than April 3, 2023. No counsel has entered appearance on behalf of Officer Buchness. County Defendants' Motion for Summary Judgment was not submitted on behalf of Officer Buchness. County Defendants contend that they have not been able to adequately prepare and argue a defense on behalf of Officer Buchness and that granting Plaintiff's Motion with respect to Officer Buchness would preclude the opportunity

7

to prepare a dispositive motion. Accordingly, Plaintiff's Motion to Substitute Parties is **DENIED** as to Officer Buchness.

The Eighth Circuit has held that dismissal without prejudice is proper at the summary judgment stage where a plaintiff has failed to identify and substitute a previously unknown defendant for a named defendant. *See Phelps v. U.S. Fed. Gov't*, 15 F.3d 735, 739 (8th Cir. 1994) (upholding dismissal without prejudice of unnamed defendants); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) (dismissal of unnamed defendants at motion to dismiss stage unwarranted when discovery could help prove identification). Because Plaintiff has failed to identify and properly substitute specific individuals for John Doe 3 and John Doe 4, Counts Six, in which John Doe 3 is the sole defendant, and Count Seven, in which John Doe 4 is the only defendant, are hereby **DISMISSED** without prejudice.

## II.     Plaintiff's Amended Complaint Alleges Claims in Defendants' Official Capacities Only

Both Clever Defendants and County Defendants argue that Plaintiff's Amended Compliant makes allegations against defendants in their official capacities alone. Plaintiff argues the opposite, claiming that listing each defendant's name separately and alleging that each defendant is an "individual and an employee," is sufficient to allege claims in both an individual and professional capacity.

A close review of Plaintiff's Amended Complaint reveals that Plaintiff has not explicitly stated whether he filed his suit against Defendants in their official capacity, individual capacity, or both. Many Eighth Circuit cases make clear that pleading as to whether a plaintiff is suing in individual or official capacity must be clear and unambiguous. *See Andrus ex rel. Andrus v. Arkansas*, 197

F.3d 953, 955 (8th Cir. 1999) ("specific pleading of individual capacity is required to put public officials on notice that they will be exposed to personal liability"); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("only an express statement that [public officials] are being sued in their individual capacity will suffice"); *Baker v. Chisom*, 501 F.3d 920, 924 (8th Cir. 2007) (merely referring to defendants as "individuals" in complaint is insufficient).That Defendants have failed to raise this issue as an affirmative defense and that Defendants' answers to the Amended Compliant referenced qualified immunity, available only to public officials sued in their individual capacity, is of no consequence, given the significant amount of Eighth Circuit caselaw establishing the clear and unambiguous standard adopted by the Eighth Circuit. *See Veatch v. Bartels Lutheran Home*, No. 08-CV-2044-LRR, 2009 WL 3270823, at *6 (N.D. Iowa Oct. 9, 2009), *aff'd*, 627 F.3d 1254 (8th Cir. 2010) ("The court will not attempt to discern such a statement by looking to [defendant's] affirmative defenses; Plaintiffs cannot overcome their pleading deficiencies by relying on the opposing party's affirmative defenses."). Accordingly, this Court finds Plaintiff's Amended Complaint alleges claims against all defendants in their official capacities alone.

III.    **Missouri State Law Claims**

   a.  **Count One**

Under Count One, Plaintiff alleges false arrest and false imprisonment under Missouri law against Defendants Clever, Loe, Hill, Guinn, and Whisnant stemming from the January 2018 incident. Plaintiff's Amended Complaint remains rather vague about how he claims to have been falsely arrested. There are two plausible instances, however, where alleged facts may conceivably

give rise to such a claim: when Plaintiff was detained briefly immediately following the child's death and when Plaintiff was arrested pursuant to a warrant for the child endangerment criminal charges.[3]

As an initial matter, false arrest is simply another name for false imprisonment. *Wallace v. Kato*, 549 U.S. 384, 388–89 (2007); *Highfill v. Hale*, 186 S.W.3d 277, 280 (Mo. 2006). False arrest under Missouri law requires showing two elements: "restraint of the plaintiff against his will, and the unlawfulness of that restraint." *Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466, 472 (Mo. Ct. App. 2005). The Eighth Circuit has held that, "a police officer who has probable cause to believe that a suspect has committed a crime is not liable for the state law tort of false arrest simply because the suspect is later proven innocent or the charges are dismissed." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 757 (8th Cir. 2001). "Accordingly, a false arrest claim begins with a probable cause analysis." *Moore v. City of Desloge*, 692 F. Supp. 2d 1122, 1132 (E.D. Mo. 2010).

Undisputed facts make clear that Defendants had at least reasonable suspicion to detain Plaintiff after arriving on scene following the child's death. Plaintiff was inside the residence at 509 Clarke when authorities arrived in response to reports of the infant who had stopped breathing. Plaintiff was not handcuffed, but he was told by at least one officer that he was not free to leave the scene. It remains somewhat unclear how long this detention lasted. County defendants claim the detention lasted about forty-five minutes. Plaintiff disputes this claim, but offers no alternative.

---

[3] This Court does not read the Amended Complaint, or Plaintiff's briefing, to include a Fourth Amendment claim stemming from the initial protective sweep officers performed at 509 Clarke, to the extent such a sweep could be interpreted as a search. Because Plaintiff did not reside at the residence in January 2018, Plaintiff had no expectation of privacy in the residence and therefore lacks standing to bring such a claim. *United States v. Barragan*, 379 F.3d 524, 529 (8th Cir. 2004) (a plaintiff "must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable.") (internal quotations omitted).

Plaintiff began taking video of police while he was outside the residence, near the street. This video shows, among other things, an interaction between Plaintiff and Lt. Duryea, an officer with the Christian County Sheriff's Office, in which Plaintiff explicitly tells Lt. Duryea that he resides in the home at 509 Clarke. While inside, officers observed a variety of conditions Plaintiff agrees were "filthy." This includes animal feces on the floor, expired food scattered throughout, cockroaches, and a flooded basement.

In *Terry v. Ohio*, the Supreme Court held that officers may briefly detain a suspect when officers have a reasonable, articulable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). The Eighth Circuit has held that no bright line rule determines the scope of a *Terry*-type investigative stop. *United States v. Morgan*, 729 F.3d 1086, 1090 (8th Cir. 2013). Rather, courts look to whether police "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Morgan* at 1090 quoting *United States v. Sharpe,* 470 U.S. 675, 686 (1985). A *Terry*-type investigative stop "may turn into an arrest if it lasts for an unreasonably long time or if officers use unreasonable force." *United States v. Donnelly*, 475 F.3d 946, 953 (8th Cir. 2007) (internal citations omitted).

It is plain from facts not in dispute that officers had the reasonable suspicion required for an investigative stop of Plaintiff upon arriving at 509 Clarke. Officers were responding to reports of an infant who had stopped breathing and was subsequently transported to a hospital. When officers arrived, Plaintiff along with others were inside the residence. These facts alone provide sufficient reasonable suspicion for a brief investigative detention of Plaintiff and others inside the house. After Plaintiff was outside the home and officers began their investigation of the scene, officers immediately observed the condition of the home, including animal feces on the floor, expired food scattered throughout, cockroaches, and a flooded basement. Around this time,

11

Plaintiff informed Lt. Duryea that he in fact resided at the location. Officers' observation of the condition of the home, knowledge that an infant had been inside the home, and Plaintiff's statement that he lived inside the home, provided probable cause for an arrest for child endangerment. To the extent the initial investigative stop became unreasonable because it lasted too long, it is therefore clear the detention remained lawful because officers' investigation yielded probable cause to arrest Plaintiff for suspicion of child endangerment. Because Plaintiff made clear to Lt. Duryea that he in fact lived at the residence and recorded this interaction on his cell phone, it is of no consequence whether Plaintiff also told Officer Guinn that he did not live at the residence. If anything, the shifting nature of Plaintiff's story about whether he in fact lived at 509 Clarke supports a finding of probable cause for arrest. The fact that Plaintiff had reasonable suspicion for briefly detaining Plaintiff upon arriving at 509 Clarke and probable cause to arrest Plaintiff shortly thereafter, indicates that Plaintiff's detention was not unlawful, precluding any false arrest allegation based on this initial detention.

To the extent Plaintiff's false arrest allegation stems from his arrest and detention pursuant to the warrant issued after the grand jury indictment on July 20, 2018, precedent is clear that such an arrest is not unlawful. *See Waters v. Madson*, 921 F.3d 725, 736 (8th Cir. 2019) ("Police officers violate the Fourth Amendment when they conduct an arrest *without a warrant or probable cause*.") (internal citations omitted) (emphasis added). To the extent Plaintiff contends Defendants somehow intentionally presented false information to the grand jury, this claim is precluded by the agreed upon facts, as described above, which establish probable cause for Plaintiff's arrest for child endangerment. This probable case was further bolstered later during the investigation when Ms. Weeks, in a recorded interview, told police officers that Plaintiff in fact resided at 509 Clarke. As discussed before, any statement that Plaintiff did not live at 509 Clarke does not automatically

12

disprove statements and other evidence that Plaintiff did live at 509 Clarke. Rather, such conflicting evidence, particularly when Plaintiff himself tells authorities that he both does and does not live at 509 Clarke, illuminates a shifting narrative, which may further support a finding of probable cause. Moreover, the issue of Plaintiff's residence is by no means dispositive as to the existence of probable cause. Creation of an unsafe living condition inside a home that causes significant risk to the bodily safety of a child does not necessarily require one to live inside that home.

### b. Count Two

Under Count Two, Plaintiff alleges malicious prosecution under Missouri law against the same defendants stemming from the January 21, 2018 incident. Under Missouri law, malicious prosecution requires: "(1) the commencement of a prosecution against the plaintiff; (2) the instigation of the prosecution by the defendant; (3) the termination of the proceeding in plaintiff's favor; (4) lack of probable cause for the prosecution; (5) that defendant's conduct was motivated by malice; and (6) plaintiff was damaged as a result." *Crow v. Crawford & Co.*, 259 S.W.3d 104, 114 (Mo. Ct. App. 2008). Missouri courts define probable cause for prosecution as, "reasonable grounds for suspicion, supported by circumstances in evidence sufficiently strong to warrant a cautious person to believe that the person accused is guilty of the offense charged." *Crow* at 115 (Mo. Ct. App. 2008) (internal citations omitted). Missouri courts are also clear that, "if a charge is initiated by indictment by a grand jury or by a prosecuting attorney on his sworn information and belief, either amounts to a *prima facie* showing that probable cause did exist for the prosecution." *Perry v. Dayton Hudson Corp.*, 789 S.W.2d 837, 841 (Mo. Ct. App. 1990) (internal citations omitted). "The *prima facie* showing is conclusive unless rebutted by evidence that false testimony was the basis of the charge and the falsity was discoverable upon reasonable investigation." *Id.*

In the present case, there is no question that a Christian County grand jury indicted Plaintiff for the child endangerment charges. (Doc. 27-10). The parties do not disagree about the condition of the residence at 509 Clarke. Nor do the parties disagree that Plaintiff informed Lt. Duryea that Plaintiff lived at the residence and that Ms. Weeks told officers the same. Collectively, these agreed facts show that any falsity presented to the grand jury as to Plaintiff's residence was not discoverable upon reasonable investigation. At most, the investigation revealed conflicting information about where Plaintiff lived. Such conflicting information does not reflect a lack of probable cause. Further, once prosecutors became more committed to the belief that Plaintiff did not live at 509 Clarke, charges against Plaintiff were dropped. (Doc. 27-18). Because probable cause existed to prosecute the child endangerment charges, Plaintiff's Count Two allegations fail against all Defendants.

### c. Counts Three, Four, and Five

Under Count Three, Plaintiff alleges false arrest against Defendants Bouldin and City of Clever for the speeding ticket issued on or about November 30, 2019. Count Four alleges malicious prosecution against Defendants Bouldin and City of Clever for the same speeding ticket. Under Count Five, Plaintiff has alleged "false and unlawful arrest, detainment, and search and seizure" against Defendants Petersen and City of Clever for the April 2021 traffic stop that resulted in Plaintiff being charged for failure to maintain proof of insurance while operating a motor vehicle. Plaintiff brings each claim under these counts under Missouri law.

It is settled that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Under Missouri statute, "public entities are generally immune from suits

for their negligent acts." *Gilmore v. Missouri Dep't of Soc. Servs., Children's Div.*, 658 S.W.3d 146, 152 (Mo. Ct. App. 2022). See Mo. Rev. Stat. § 537.600.1 (tort immunity in effect unless specifically waived). Missouri statute has waived tort immunity for the following situations.

> Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition. Mo. Rev. Stat. § 537.600.1 (2).

It is well settled under Missouri law that plaintiffs must plead with some specificity facts that show why sovereign immunity does not prevent a lawsuit against a public entity. *Richardson v. City of St. Louis*, 293 S.W.3d 133, 137 (Mo. Ct. App. 2009). Apart from claiming that Plaintiff has sued Defendants Loe, Hill, and Guinn in their individual capacities and are therefore unentitled to sovereign immunity, Plaintiff does not appear to respond to the County Defendants' argument that sovereign immunity prevents Plaintiff's claims in Counts Three, Four, and Five. Likewise, Plaintiff does not appear to respond to Clever Defendants' arguments about sovereign immunity. This Court finds that Plaintiff's claims under Counts Three, Four, and Five against all defendants do not fit into a statutory exception to sovereign immunity. Accordingly, Plaintiff's allegations against all Defendants under Counts Three, Four, and Five are dismissed.[4]

## IV.    Federal Claim

In Count Eight, Plaintiff cites 42 U.S.C. § 1983 and alleges civil rights violations against all defendants for the conduct described in each of the preceding counts. Specifically, Plaintiff cites

---

[4] Sovereign immunity bars Plaintiff's claims against all defendants in Count One and Two as well, as these claims do not fit into any statutory exception.

the Fourth Amendment's ban on unreasonable searches and seizures. Plaintiff also alleges, generally, that it is "the policy and practice of Clever and Christian County to unlawfully follow, stop, search, seize, restrain, detain, and/or arrest citizens including [Plaintiff] without probable cause." (Doc. 1-2 at ¶ 94).

As discussed before, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eighth Circuit has explained, "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Indep., MO.,* 829 F.3d 695, 699 (8th Cir. 2016) (internal citations omitted) (cleaned up). Plaintiff has cited no official policy that instructs employees to violate federal or state law. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404, (1997) ("Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward"). Nor has Plaintiff alleged or argued a deliberate indifference to train or supervise employees. Instead, Plaintiff's argument appears to focus on whether Defendants Christian County and City of Clever had a custom or practice of detaining people including to but not limited to Plaintiff without probable cause. (Docs. 34 at 17, 35 at 11, and 1-2 at ¶ 94). The Eighth Circuit has held that showing that a municipality has employed an unconstitutional custom, requires showing: "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation." *Corwin* at 700 (citations omitted).

In the present case, there is an absence of evidence showing a "continuing, widespread, and persistent pattern" of unconstitutional conduct. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case"). The various alleged instances in the Amended Complaint do not constitute a widespread policy on the part of Defendants Christian County and City of Clever. For a custom to be unlawful, "the pattern of unconstitutional conduct must be so pervasive and widespread so as to have the effect and force of law." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (internal citations omitted). First, as described above, probable cause supported the arrest and prosecution of Plaintiff for child endangerment stemming from the investigation that began January 21, 2018 following the death of the infant. Probable cause indicates conclusively that the events that gave rise to Plaintiff's Count One and Two allegations cannot speak to a widespread unconstitutional practice. While the parties disagree about whether there was probable cause for the various traffic stops alleged, three such stops of a single individual of during a period of three years does not illuminate a pervasive and widespread practice. Second, to the extent Plaintiff argues the incident that gives rise to Count Six, when Plaintiff's neighbor may have called police on him, this incident is too factually distinct from the traffic stops to evidence a custom of similar behavior. *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 798 (8th Cir. 1998) ("In order to subject the city to § 1983 liability Rogers must show that the city had a policy or custom of failing to act upon prior similar complaints of unconstitutional conduct) (internal citations omitted). Further, each alleged incident in Plaintiff's Amended Complaint

17

implicates different officers. There is no allegation or evidence suggesting these various officers somehow conspired to deprive Plaintiff of constitutional rights. Finally, Plaintiff contends that the specific incidents alleged in the Amended Complaint are "just some of the many meritless stops, seizures and/or charges the Clever police has made against Tripp." (Doc. 35 at ¶ 27). Yet Plaintiff offers no further allegations, let alone evidence, of what these additional instances may entail. Accordingly, Plaintiff's Count Eight §1983 claim against Defendants Christian County and the City of Clever are dismissed with prejudice.

## CONCLUSION

For foregoing reasons, Plaintiff's Motion to Substitute Parties is **GRANTED** as to Defendant Petersen and **DENIED** as to Officer Buchness. Clever Defendants' Motion for Summary Judgment is **GRANTED**. County Defendants' Motion for Summary Judgement is also **GRANTED**. Plaintiff's Amended Complaint alleged claims against all defendants only in their official capacities. All claims against all defendants in Counts One, Two, Three, Four, Five, and Eight are **DISMISSED** with prejudice. Counts Six and Seven, which Plaintiff alleged against John Doe 3 and 4 respectively, are **DISMISSED** without prejudice, as Plaintiff has failed to discern the identity of the unnamed defendants listed in those counts. Finally, Clever Defendants' Motion for Extension of Time of Pretrial Submission Deadlines is **MOOT**.

**IT IS SO ORDERED.**

Dated: July 26, 2023                    _/s/ Douglas Harpool_____
                                        **DOUGLAS HARPOOL**
                                        **United States District Judge**